UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

IRON PARTNERS, LLC, an Oregon
limited liability company,

    Plaintiff,

v.

MARITIME ADMINISTRATION,
UNITED STATES DEPARTMENT OF
TRANSPORTATION; KAISER
VENTURES, LLC; KSC RECOVERY
INC.; KAISER STEEL CORPORATION;
AND KAISER COMPANY, INC.,

    Defendants.

Case No. C08-5217 RBL

**ORDER**

THIS MATTER IS BEFORE THE COURT on Defendant United States' Maritime Administration's Motion for Partial Dismissal, or alternatively for Partial Summary Judgment [Dkt. #19]. The underlying case involves ownership, use, and contamination of real property ("the Property") in Vancouver, Washington.

During World War II, Defendant Kaiser used the Property to build U.S. Navy and merchant ships, pursuant to a 1942 contract with the United States' Maritime Administration. Kaiser initially leased, and then, in 1943, purchased the Property from the Hidden family. The United States acquired the Property from Kaiser in 1946[1] and apparently owned it until 1960.

---

[1] Plaintiff alleges the United States acquired the Property in 1949.

Plaintiff Iron Partners is the Property's current owner. Iron Partners claims that in April, 2005, it discovered buried debris on the Property[2] consisting of burned materials, scrap metal, and diesel. The debris also included newspaper clippings from 1943 (apparently indicating that the debris was buried in that time frame).

In 2008, Iron Partners brought this action against Kaiser[3] and the Maritime Administration[4], asserting federal claims under the Comprehensive Environmental Recovery and Conservation Act ("CERCLA") and the Federal Tort Claims Act ("FTCA"), and state law claims under Washington's Model Toxics Control Act ("MTCA"), and for trespass. Iron Partners has since stipulated to the dismissal of its MTCA claims for lack of jurisdiction. [Dkt. #s 27 & 28]. This Motion therefore seeks dismissal or partial summary judgment on Plaintiff's remaining state law trespass claim.

Plaintiff's complaint alleges that the Maritime Administration and/or Kaiser disposed and/or released hazardous substances onto the Property, and that the substances' continued presence there has caused and will continue to cause it damages. Iron Partners alleges that it has spent in excess of $130,000 in investigation and remediation costs to date, and that it is likely to spend in excess of $2.5 million to complete the remediation necessary as the result of the presence of the hazardous substances.

The United States' Maritime Administration seeks dismissal of this claim under Fed. R. Civ. P. 12(b)(1), alleging that it has not waived sovereign immunity for such a claim, and that this court accordingly does not have jurisdiction over the state law trespass claim. Alternatively, it seeks summary judgment on this claim, based on the factual allegations and evidence provided by the parties.

The Maritime Administration specifically argues that the Federal Tort Claims Act (FTCA)'s limited

---

[2] Both parties describe the Property as "adjacent to and connected with" the property upon which the World War II shipyard activities occurred, but neither explains the precise relationship between the Property and the adjacent property, and only one legal description is provided. It does not appear that any distinction between the parcels is relevant to the resolution of this Motion.

[3] Kaiser Company, Inc., operated the Vancouver shipyard during World War II. At a later date, it changed its name to Kaiser Steel, Inc., and it filed for Bankruptcy protection in 1987. Plaintiffs allege that its successor in interest since that time was Kaiser Ventures, Inc., and is now Kaiser Ventures, LLC. KSC Recovery is alleged to be a wholly owned subsidiary of Kaiser Ventures, LLC, and the reorganized successor in interest to Kaiser Steel Corporation. All iterations of the company will be referenced as "Kaiser" in this Order, unless the context requires specific identification.

[4] The Maritime Administration was formerly known as the Maritime Commission. Both entities are agencies of the United States.

ORDER
Page - 2

waiver of sovereign immunity does not extend to the trespass claim asserted here, under both the discretionary function and contractor exceptions to the FTCA. Defendant also argues that trespass is a strict liability claim, and that the FTCA does not permit recovery from the United States on a strict liability basis.

Iron Partners argues that there are factual issues going to the court's jurisdiction, specifically the scope of the discretionary function and contractor exceptions to the FTCA's waiver of sovereign immunity. It argues that those factual issues precludes Defendant's Motion on either the Rule 12(b)(1) or the Rule 56 basis.

For the reasons outlined below, the Motion is GRANTED.

**STANDARDS OF REVIEW**

The Maritime Administration's Rule 12(b)(1) jurisdictional challenge to Plaintiff's trespass claim is factually based. It argues that under the facts of the case, Plaintiff cannot establish a waiver of sovereign immunity. The parties agree that such a challenge is not restricted to the face of the pleadings, but that the court may review evidence supplied by them to resolve factual disputes concerning the existence of jurisdiction. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir 1988). The consideration of such evidence does not convert the Motion to a Motion for Summary judgment. If a factual dispute remains, the Motion to dismiss may be granted "only if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roberts v Carrothers*, 812 F.2d 1173 (1987); *Spytek v. Astrue*, 2008 WL 3288568 (W.D. Wash. 2008).

The standard for summary judgment is well established and familiar. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**The Scope of the FTCA's Waiver of Sovereign Immunity**.

    **1.    The Discretionary Function Exception**.

The parties agree that the issue to be resolved on this Motion is the extent of the FTCA's waiver of sovereign immunity. 28 U.S.C. §1346(b) contains a waiver of sovereign immunity for the negligence or wrongful acts of governmental employees acting within the scope of their employment for which a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *See also Childers v. United States*, 40 F.3d 973 (9th Cir. 1995).

The parties also agree that this waiver has several exceptions, including the "discretionary function" exception. Where the act complained of is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the governmental employee, even if the discretion is abused, the FTCA does not waive sovereign immunity. *See Childers, infra*, and 28 U.S.C. §2680(a). While the burden of demonstrating a waiver of sovereign immunity is on the party bringing an action against the United States, *Mitchell v. United States*, 787 F.2d 466 (9th Cir. 1986), in the Ninth Circuit, the government bears the initial burden of demonstrating the applicability of the discretionary function exception to the FTCA waiver. *Prescott v. United States*, 973 F.2d 696 (9th Cir. 1992).

The discretionary function exception to the FTCA waiver is based on a desire to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy decisions through the medium of an action in tort. *See United States v. SA Empressa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984) ("*Varig*"). In order to determine whether the exception applies, a two part test is employed. First, the challenged governmental actions must not have been pursuant to a statute, regulation, or policy that prescribed a specific course of conduct for a governmental employee to follow. *See Berkowitz v. United States*, 486 U.S. 531, 526 (1988). The existence of such a statute or policy means that there is no element of discretion. Second, the court ensures that the discretionary function exception applies only to the type of governmental conduct and judgment that Congress intended to shield from tort liability. It is the nature of the conduct, not the status of the actor,

that governs whether the exception applies. *See United States v. Gaubert*, 499 U.S. 315, 325 (1991). The government need not show that the employee's actions were the result of policy analysis, but only that they were "susceptible of policy analysis." *Id. Furthermore,* where the government exercises discretion pursuant to a statute, regulation, or policy, then it must be presumed that the acts are grounded in policy considerations. As a result, in order to survive a motion to dismiss, the claimant must allege facts which would support a finding that the challenged actions are not the kind of conduct which can be said to be grounded in the policy of a regulatory scheme.

With these standards in mind, the Maritime Administration correctly frames the issue to be resolved here as whether the government's conduct in contracting with Kaiser to build, operate and maintain the Vancouver shipyard from 1942 to 1946, and its own ownership until 1960, was subject to choice and discretion. If it did, the second inquiry is whether its conduct was susceptible to being based on social, economic, or political considerations. If the answer to that question is yes, the exception applies and the court does not have jurisdiction over the plaintiff's tort claim for trespass under the FTCA.

The Maritime Administration's Motion is based on its contention that during the war effort, it contracted with Kaiser to build ships "faster than they could be sunk," and that its decisions in delegating the day to day operations of the shipyard to Kaiser were discretionary. It argues that its decisions regarding oversight of Kaiser's operations, including the generation and disposal of the debris at issue, were not the result of a mandatory and specific duty. Instead, these decisions were of a classically discretionary nature, made in the context of a World War implicating social, economic, political (and a host of other) policy considerations.

The Maritime Administration argues correctly that the decision to hire a contractor is itself discretionary, citing, for example, *Guile v. United States*, 422 F.3d 221, 231 (9th Cir. 2005); *Alinsky v. United States*, 415 F.3d 639 (7th Cir. 2005). It also cites a number of cases holding that the government's discretionary oversight of a contractor is immune for tort suit by virtue of the discretionary function exception. *See In re Consol. U.S. Atmos. Testing Litigation*, 820 F.2d 982 (9th Cir. 1987); *Bibeau v. Pacific Northwest Research Found., Inc*, 339 F.3d 942, 946 (9th Cir. 2003)(failure to supervise contractor in absence of mandate to do so is discretionary); *Hagy v. United States,* 976 F. Supp 1373,1378 (W.D. Wash. 1997)(negligence or failure to supervise a contractor is discretionary, so long as arguably based on

policy considerations.)

The Maritime Administration argues, then, that its decision to hire Kaiser, and its alleged failure and or negligence in supervising its contractor's operations (including specifically Kaiser's actions in disposing of the debris at issue) was done in the absence of any mandatory statutory or regulatory duty, and was therefore discretionary. Thus, it argues, the FTCA's waiver of sovereign immunity does not apply, and this court does not have jurisdiction over Iron Partners' claim for trespass, and/or for negligence in hiring or supervising Kaiser.

Iron Partners concedes that the government's decision to use an independent contractor to construct ships, its selection of Kaiser, and the government's delegation to Kaiser of the day to day shipbuilding operation are not at issue. In arguing that the discretionary function exception does not apply, Iron Partners focuses instead on the government's actions and inactions at the *end* of the war effort. It cites primarily the Maritime Commission's Procedures regarding the transfer of the ship yard to "standby" status, dated July 25, 1945, [see Exhibit I to the Lively Affidavit, Dkt. #34], and the "Instructions regarding the reporting, handling, and disposal of unrequired surplus materials and facilities," dated November 13, 1945 [ Exhibit E to the Lively Affidavit, Dkt. #34].

As characterized by Iron Partners, these documents removed any "choice" or discretion about the government's actions at the end of the war, and instead constitute a self imposed "policy" or regulation to ensure that the scrap material was accounted for and disposed of properly. Thus, it argues, the failure to do so was in contravention of a mandate, and was not discretionary.

Iron Partners also argues that "the contract" [presumably the agreement between the Maritime Commission and Kaiser (Ex A to the Maritime Administration's Brief)] required the government to "restore the property to the condition it was in prior to the use of the facility for shipbuilding, and to leave the property in good condition as immediately prior to the acquisition" **if** Kaiser did not elect to purchase the property and required it [the U.S.] to do so. *See* Iron Partners' Brief at 10 [Dkt. #33].

As to the latter point, the facts of the case as presented to the Court do not trigger this conditional obligation. First, Kaiser apparently *already* owned (or at least controlled) the shipyard Property, as early as 1943, and continuing to either 1946 or 1949, when the United States purchased it. Second, there is no evidence supporting the contention that Kaiser ever "required" the United States to "do so." Finally, as the

Maritime Administration argues, the debris at issue was allegedly buried in 1943, and there is no evidence that the United States had actual knowledge of the debris burial – instead, its argument necessarily[5] is based on its claim that the government was negligent in failing to prevent or rectify that conduct.

Iron Partners' argument based on the Procedures and Instructions suffers from similar flaws. The government's instructions, essentially to itself, related to handling of surplus materials and debris at the end of the war. As the Maritime Administration points out, the conduct at issue – burning and burying scraps and debris, and contaminating the area with diesel, occurred during the shipyard's operation, not at the end of the war. Furthermore, and in any event, the term "proper" disposal did not necessarily preclude this practice in 1943– at the time the contractor, Kaiser, presumably buried the debris. Finally, the Kaiser shipyard at issue was not "closed out" in 1945; it was instead maintained in "standby" status. Accordingly, the Instructions relating to "close out" did not apply to the Property at that time.

The Court is therefore convinced under the largely undisputed facts submitted that the Maritime Administration's alleged failure to properly supervise or otherwise ensure that the Property was debris free was discretionary, and it was more than "susceptible" to policy considerations. Thus, the first prong of the discretionary function exception is met.

The second inquiry is whether the Maritime Administration's judgment in dealing with Kaiser and the shipyard is of the kind the discretionary function is designed to shield. *See Prescott,* 973 F.2d at 703. The exception shields decisions grounded in social, economic or political policy.

The Maritime Administration emphasizes that the decision at issue here – the delegation of day to day shipyard functions to Kaiser and its employees fundamentally involved policy considerations, and that the responsibility for compliance with any waste disposal requirements rested with Kaiser, not the United States. It argues that the decision to mobilize and then demobilize the war effort in the 1940s is precisely the sort of discretionary, judgmental decision-making process that the exception was designed to protect from subsequent tort actions.

Iron Partners again focuses on the government's failure to require Kaiser to clean up the Property,

---

[5] The Maritime Administration argues that the jurisdictional question must be answered before the government's alleged negligence is even relevant. *See In re Glacier Bay* 71 F.3d 1447, 1451 (9th Cir. 1995). Additionally, any claim that the government is liable solely because it did not remove the material, regardless of any culpability in its placement, must fail. Such an argument would be based on strict liability, which is not a claim that can be made under the FTCA. *See Laird v. Nelms*, 406 U.S. 797, 798 (1972).

not on the war effort itself. The core of its argument is that because the government established guidelines for the proper post-war clean up of the site, and adopted rules and conducted inspections, its failure to adhere to these guidelines takes its conduct out of the discretionary function exception.

The legal basis for this argument is *Camozzi v. Roland/Miller and Home Consulting Group*, 866 F.2d 287, 292 (9th Cir. 1989). There, the government contracted with Roland/Miller to supervise and manage the construction of a postal facility, and with Roebbelen to be the project's general contractor. The Roebbelen contract required the general contractor to "take proper safety and health precautions to protect the work, the workers, the public, and the property of others," among other provisions described below. Two workers fell through holes in metal decking during construction, and sued the government for negligence. The District Court dismissed the claims on summary judgment, citing the discretionary function exception to the FTCA's waiver of sovereign immunity, and the Ninth Circuit reversed. It held that because the government retained safety obligations under its contract with Roebbelen, the acts and omissions of its employees in performing those safety functions did not involve policy judgments, and therefore were not excluded from the FTCA. This holding was based on a factual background which is not like the factual situation in the present case. In *Camozzi*, the Ninth Circuit explained the high level of day to day oversight and management retained by the government with respect to safety issues at the postal facility construction site:

> The contract also stipulated that metal deck openings be covered. Work not conforming to contract specifications was to be deemed defective and rejected by USPS. Roebbelen was to submit to USPS for approval a job safety program designed to "minimize or eliminate occupational injuries." Roebbelen was required to furnish USPS an on-site field office and was required to report all accidents to USPS. All work was to be performed under the general direction of USPS's contracting officer or his delegate. The contractor was to perform the work in accordance with orders authorized by USPS's contracting officer. USPS could change "the method or manner of performance of the work" without notice; remove any employee it deemed "incompetent, careless or otherwise objectionable;" or terminate or suspend the contract at its convenience. USPS could cancel the contract for failure to comply with health and safety standards.

*Camozzi*, 866 F.2d at 288.

In light of this detailed level of management, the Ninth Circuit concluded that the policy and judgment considerations underlying the discretionary function exception were not met:

> The alleged negligence upon which plaintiffs rely– the negligence of USPS in performing its retained safety functions– involved no policy choices. Failure to inspect floors for uncovered and unguarded openings, for example, was not the result of a policy choice by the particular employees or agents involved. It was simply a failure to effectuate policy choices already made and incorporated in the contracts.

*Id.* at 290.

In contrast, the government's contract with Kaiser, its own procedures or instructions, and historians' accounts[6] of the manner in which shipyards were managed do not portray the level of day to day, hands on management described and relied upon by the Ninth Circuit in *Camozzi*.

The government's judgment and discretion as to the delegation of virtually all aspects of the shipbuilding process to Kaiser during World War II, and immediately afterwards, was firmly grounded in policy considerations, and for that reason was the sort of judgment that the exception was designed to shield. The second prong of the discretionary function test is therefore met, as well. The government's acts and omissions, if any, with respect to the waste handling and disposal at the Property during and immediately after World War II is excepted from the FTCA's waiver of sovereign immunity, and the court does not have jurisdiction over Plaintiff's tort claim for trespass based on that conduct. That claim (Iron Partners' Fifth Claim for Relief) is therefore DISMISSED.

### 2.    The Contractor Exception.

The Maritime Administration also argues that the "contractor exception" to the FTCA deprives this Court of jurisdiction over Iron Partners' trespass claim. The gist of this argument is that the government is not liable for the negligence of its independent contractors. *See Logue v United States*. 412 U.S. 521, 526 (1973); 28 U.S.C. §2671 (FTCA's definition of "federal agency" does not include contractors). The Maritime Administration's position is that any negligence in Kaiser's day to day operation of the Vancouver shipyard cannot be imputed to it, unless Iron Partners can establish that the government directed those day to day operations. It argues that, for the reasons discussed above, Iron Partners cannot establish such direct control and oversight. *See Laurence v. United States*, 851 F.Supp. 1445 (N.D. Cal. 1994), *aff'd* 59 F.3d 112 (9th Cir. 1995). In the factual context of this case, the application of this

---

[6]Both parties rely on Frederic C. Lane's treatise, *Ships for Victory*, as an authoritative historical account of the wartime shipbuilding effort and a discussion of the management practices applicable generally and to the yard at issue.

exception is closely related to the discretionary function exception, discussed above.

Iron Partners argues that this exception does not apply, or at least that there is a question of fact as to its application. It cites *Hagy v. United States,* 976 F. Supp 1373,1378 (W.D. Wash. 1997) for the proposition that the government can be held vicariously liable for the negligent actions of its contractors, where it retained the authority to control the detailed physical performance of the contract and exercised substantial supervision over their day to day activities.

In order to characterize the government's relationship with Kaiser as falling within this standard, Iron Partners relies in large part on a passage from Lane's Treatise that the government's supervisory role over wartime shipyards generally was "very far from passive," and on its claim that the government had a representative on site during and after the war.

It specifically relies on the "instructions" dealing with the anticipated "closeout" of the yard which stated that "as the facilities are removed from service, they shall be cleaned up and all litter, trash, scrap and valueless material shall receive proper disposition." The flaw in this analysis as applied to the shipyard in question is discussed above.

The Maritime Administration also provides evidence that the day to day operations were in fact left to Kaiser, that Kaiser dealt directly with state authorities on issues of waste disposal and compliance with state regulations. *See* Ex. D to Reply Brief, Dkt. #33. It also provides evidence that the government could not supervise and directly control the shipyards' almost 34,000 employees on a daily basis. Indeed, two of its so-called "inspectors" were based not in Vancouver, but in Seattle. *See* Ex.C to Lively Dec; Dkt. #34.

For these reasons, the Court concludes that the contractor exception also applies, and the FTCA does not waive sovereign immunity for the Plaintiff's trespass claim. The Court does not have jurisdiction over that claim, and it is therefore DISMISSED.

IT IS SO ORDERED.

Dated the 5th of March, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE