HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| IRON PARTNERS, LLC, an Oregon limited liability company,<br><br>                Plaintiff,<br><br>     v.<br><br>MARITIME ADMINISTRATION; DEPARTMENT OF TRANSPORTATION; KAISER VENTURES, LLC; KSC RECOVERY, INC; KAISER STEEL CORPORATION; and KAISER COMPANY, INC.,<br><br>                Defendants. | No. 3:08-cv-05217 RBL<br><br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT ON KAISER'S CERCLA AND MTCA CLAIMS AGAINST EVRAZ [Dkt. #75] |
| KAISER VENTURES, LLC; KSC RECOVERY, INC.; KAISER STEEL CORPORATION; and KAISER COMPANY, INC.,<br><br>                Third-Party Plaintiffs,<br><br>     v.<br><br>EVRAZ OREGON STEEL MILLS, INC.,<br><br>                Third-Party Defendant. | |

ORDER - 1

## I. Introduction

This matter is before the Court on Evraz Oregon Steel Mills' Motion for Summary Judgment on Kaiser's CERCLA and MTCA Claims against Evraz [Dkt. #75]. The underlying case involves ownership, use, and contamination of real property in Vancouver, Washington.

## II. Background

During World War II, Third-Party Plaintiff Kaiser Company, Inc.[1] built U.S. Navy and merchant ships on property in Vancouver, Washington (the "Vancouver Shipyard"). Kaiser developed the shipyard under a 1942 contract with the United States' Maritime Administration. The contract was terminated in 1946, and the United States put the shipyard on standby status.

In 1960, Gilmore Steel Corporation ("Gilmore") purchased the 230 acre Vancouver Shipyard. Third-Party Defendant Evraz Oregon Steel Mills, Inc. ("Evraz") is successor-in-interest to Gilmore. Gilmore purchased the Vancouver Shipyard to acquire title to and dispose of all the surplus equipment included in the purchase. It also intended to scrap the surplus ships and steel for its Portland steel mill, and it intended to obtain fee land as a possible location for a new steel mill, which Gilmore never built. Although not part of its business plan, Gilmore subsequently leased buildings and outside storage areas to tenants on a short-term basis.

In 1968, Gilmore sold its interest in the Vancouver Shipyard to Gilmore Steel Corporation Washington Pension Trust ("Gilmore Trust"). Gilmore also entered into an agreement with Gilmore Trust under which Gilmore operated and managed the industrial center. This relationship continued until 1972, when Gilmore Trust sold the Vancouver Shipyard to Columbia Associates. It is not clear how or when the property was later subdivided, but it is clear that Plaintiff Iron Partners, LLC now owns a 2.75 acre parcel in what was previously the Vancouver Shipyard (the "Iron Partners Property").

On or about April 2005, Iron Partners discovered buried debris on the southeast portion of the Iron Partners Property. When tested, the debris site was found to contain hazardous

---

[1] Kaiser Company, Inc. operated the Vancouver shipyard during World War II. At a later date, it changed its name to Kaiser Steel, Inc., and it filed for Bankruptcy protection in 1987. Iron Partners alleges that its successor in interest was Kaiser Ventures, Inc., and is now Kaiser Ventures, LLC. KSC Recovery is alleged to be a wholly owned subsidiary of Kaiser Ventures, LLC, and is the reorganized successor in interest to Kaiser Steel Corporation. All iterations of the company will be referenced as "Kaiser" in this Order, unless the context requires specific identification.

ORDER - 2

substances as defined by CERCLA and exceeded applicable cleanup levels under MTCA. The debris site extends to adjoining parcels that are owned by the City of Vancouver and L&L Land Company. Iron Partners, the City, and L&L had a Remedial Investigation, Feasibility Study, and Disproportionate Cost Analysis Report (the "RI/FS Report") prepared of the "Former Kaiser Debris Site."

In April 2008, Iron Partners brought suit against Kaiser, the Department of Transportation, and the Maritime Administration under the Model Toxics Control Act ("MTCA")[2] and the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA")[3]. Iron Partners seeks damages for all past and future costs incurred as a result of the disposal of hazardous substances on its property. In its initial complaint, Iron Partners defines "the Property" as the 2.75 acre portion of the Vancouver Shipyard currently owned by Iron Partners.

In July 2009, Kaiser brought a third-party complaint against Evraz under CERCLA and MTCA, seeking contribution from Evraz, if Kaiser is determined to be liable to Iron Partners. Evraz moves for summary judgment, arguing that there is no evidence that Gilmore disposed or released any hazardous substances on the Iron Partners Property and, therefore, it cannot be liable as a PRP under CERCLA or MTCA.

### III. Standard of Review

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not

---

[2] RCW 70.105D and WAC 173-340

[3] 42 U.S.C. § 9601

affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### IV. Analysis

CERCLA "imposes strict liability on owners and operators of facilities at which hazardous substances were disposed." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001). Those private parties are then authorized under CERCLA to sue certain statutorily defined "responsible parties" to recover costs incurred as a result of cleaning up hazardous waste. *Id.* In a private cost recovery action, the plaintiff must establish the following:

1) that the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9);

2) that a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4);

3) that such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and

4) that the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a). *Id.* at 870-71.

The question here revolves around the fourth element above: Is there an issue of material fact as to whether Evraz is among the four classes subject to liability under CERCLA.[4] The four classes of Potentially Responsible Parties ("PRPs") are as follows:

---

[4] The parties also disagree about the extent of Evraz's potential liability in this suit and the definition of "facility" under CERCLA and MTCA. Evraz argues that the only parcel at issue in this lawsuit is the 2.75 acre parcel owned by Iron Partner, and that the only costs at issue in this lawsuit are related to that particular parcel. Kaiser argues that Evraz is potentially liable under CERCLA and MTCA for the entire debris field located on the Vancouver Shipyard, including the parcels owned by the City and L&L. It is not necessary at this time to determine for which portions of the debris field Evraz is potentially liable. An issue of material fact exists as to whether hazardous materials were disposed of on the Iron Partners Property during Gilmore's ownership, regardless of what Gilmore allegedly disposed of on other portions of the Vancouver Shipyard.

ORDER - 4

1) "the owner and operator of a vessel or a facility;"

2) "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;"

3) any person who by contract, agreement, or otherwise arranged for disposal or treatment…of hazardous substances…;" and

4) any person who accepts or accepted any hazardous substance for transport to disposal or treatment facilities…." 42 U.S.C. § 9607(a)(1)-(4).

Kaiser claims Evraz is a PRP under the second classification: a person who at the time of ownership or operation of the facility disposed of hazardous substances. Evraz argues that summary judgment is appropriate because there is no evidence that Gilmore disposed of any hazardous substances at the time it owned or operated the Iron Partners Property.

Kaiser argues that Gilmore collected scrap from the Vancouver Shipyard, tore down 19 structures left on the property from the World War II era, and buried the structures and their contents on the Vancouver Shipyard throughout the duration of its ownership. In support, Kaiser offers the following evidence: 1) the debris found appears to be associated with industrial activity [RI/FS Report at A-5]; 2) the City's archaeological assessment showed a high frequency of lumber and other wood debris, which suggests the debris consists of former buildings or structures [RI/FS Report at A-5]; 3) Gilmore demolished, or scheduled for demolition, 19 structures on the Vancouver Shipyard by 1968 [Brandt-Erichsen Dec. Exs. 6, 7]; 4) historical aerial photographs show Gilmore had controlled access to the debris sites throughout 1960 to 1972, and that disposal and earth moving occurred on the sites during that time period [Grip Dec. & Exs.]; and 5) items found in the debris date to the World War II period, and the structures on the parcel at the time of Gilmore's purchase likely contained World War II era materials. Essentially, Kaiser argues there is evidence Gilmore contributed to the buried debris because it had access to the type of materials that were found in the debris site, and aerial photographs indicate disposal and disruption in the area of the debris site during Gilmore's occupancy.

Kaiser's expert, Mr. Grip, relies on aerial photographs taken between 1960 and 1971 and opines that disposal occurred on the Vancouver Shipyard throughout Gilmore's ownership and

operation [Decl. Dkt #78].  Evraz argues that the court should strike Mr. Grip's Declaration under Fed. R. Evid. 401, 402, and 702.  Specifically, Evraz argues that Mr. Grip's testimony is inadmissible because 1) it fails to opine about the only issue before the court: whether hazardous substances were disposed of on the Iron Partners Property; 2) Mr. Grip does not state whether his opinions were formed on a more probable than not basis, and therefore gives no indication of his certainty; and 3) Mr. Grip does not identify the factual basis on which he relies for the opinion that truckloads of material were dumped and, "when the surface became choked with materials, a bladed vehicle such as a bulldozer would be used to pull the materials over the edge of the escarpment."

Although Mr. Grip does not opine specifically about hazardous substances, evidence of disposal is relevant to the argument that Gilmore did dispose of the structures on its property, and that the disposal occurred in areas where hazardous substances were subsequently found. Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Mr. Grip's testimony regarding disposal provides circumstantial evidence that the structures torn down on the Vancouver Shipyard were deposited in part on the Iron Partners Property.

Mr. Grip's failure to state whether his opinions were formed on a more probable than not basis is not fatal to the admissibility of his declaration because he articulates his level of certainty.  Mr. Grip does not use the phrase "more probable than not," but he does state that "it is clear that significant disposal activities occurred within the study area within the 1960s and the early 1970s."  Mr. Grip does not state that it is possible disposal occurred.  Rather, he states that disposal did occur, which exceeds the "more probable than not" standard.

Finally, Evraz argues that, other than relying on the aerial photographs, Mr. Grip does not provide the factual basis for his opinion.  However, an "[e]xpert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." *Bulthuis v. Rexall Corp.*, 789 F.2d

1315, 1318 (9th Cir. 1985). Evraz does not explicitly challenge Mr. Grip's competence to give an expert opinion. In regard to the factual basis, Mr. Grip bases his opinion on observations of the aerial photographs. He also discusses light colored areas and specific textures on the areas of disposal. Although he does not provide underlying factual detail for his opinions, any question regarding the credibility of his opinions goes toward weight, not admissibility. Mr. Grip's affidavit is admissible.

Without Mr. Grip's Declaration, the court might well grant Evraz's Motion for Summary Judgment. Even with Mr. Grip's testimony, the evidence that Evraz qualifies as a PRP under CERCLA is fairly thin. However, Kaiser does present an issue of material fact as to whether Gilmore disposed of hazardous substances during its occupancy of the Vancouver Shipyard. Although Evraz argues that the facts do not give any evidence that *hazardous* materials were disposed during Gilmore's occupancy, Kaiser does present circumstantial evidence that Gilmore deposited the type of material found in the debris site. The discovered debris contained the hazardous materials found on the Iron Partners Property, regardless of whether the debris was buried solely in the 1940s, solely in the 1960s, or during both time periods. Viewed in the light favorable to Kaiser, the evidence establishes an issue of fact whether Gilmore disposed of any debris in the debris site and, therefore, potentially contributed to the disposal of hazardous materials. Because there is a genuine issue of material fact as to whether Gilmore was a PRP under CERCLA, summary judgment is not appropriate at this time.

MTCA also creates a right of action for private parties seeking contribution from other liable parties under RCW 70.105D.040. A potentially liable party is "[a]ny person who owned or operated the facility at the time of disposal or release of the hazardous substances." *Id.* The same issues of fact exist for the MTCA cause of action, and summary judgment is not appropriate at this time.

### V.  Conclusion

Evraz Oregon Steel Mills' Motion for Summary Judgment [Dkt. #75] on Kaiser's CERCLA and MTCA Claims against Evraz is DENIED.

**IT IS SO ORDERED.**

Dated this 21st day of July, 2010.

*/s/ Ronald B. Leighton*
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE